UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
MARK KOTTLER, KAREN S. LONG and
ROBERT E. LONG, on their own behalf :
and on behalf of all others similarly situated,
:

        Plaintiffs,

:         05 Civ. 7773 (PAC)

  -against-

:        <u>OPINION & ORDER</u>

DEUTSCHE BANK AG, et al.,

:

        Defendants.

:
------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

This case arises from the well-documented sale of illegal tax shelters by the accounting firm KPMG and the law firm Brown & Wood in the late 1990s and early 2000s. Plaintiffs used the tax shelters and have sued and recovered moneys from KPMG and Brown & Wood. They now sue two banks and an investment advisor who are alleged to have participated and assisted in the formation, promotion, and execution of these failed tax shelters.

Plaintiffs Mark Kottler, Karen S. Long, and Robert E. Long ("Plaintiffs") sue on behalf of themselves and Class Members similarly situated ("Class Members"), seeking recovery on seven causes of action: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; (2) civil conspiracy to defraud; (3) common law fraud; (4) aiding and abetting fraud; (5) unjust enrichment; (6) breach of fiduciary duties; and (7) aiding and abetting breach of fiduciary duties.[1] Defendants move to dismiss the complaint. For the reasons that follow, the motions are GRANTED in part and DENIED in part.

---

[1]     Plaintiffs bring the breach of fiduciary duties claim solely against Defendant Presidio Advisors LLC. The other claims include all three defendants.

## SUMMARY OF FACTS

### I. Introduction

The facts summarized below are taken from the Amended Complaint, the allegations of which must be assumed true for purposes of these motions to dismiss.  The crux of the Amended Complaint is that two banks, Defendants Deutsche Bank AG and Bayerische Hypo- und Vereinsbank AG ("HVB"), and an investment advisor, Presidio Advisors LLC, along with co-conspirators KPMG and Sidley Austin Brown & Wood ("Brown & Wood")[2] participated in a scheme to defraud the Plaintiffs.  Plaintiffs allegedly relied on misleading representations made by the Defendants and the co-conspirators and purchased tax products that were subsequently found by the Internal Revenue Service ("IRS") to be unlawful tax-avoidance schemes.  In sum, Presidio developed the tax strategies, KPMG, a major accounting firm, marketed the strategies to their clients (high net worth individuals), the law firm of Brown & Wood gave independent legal approval of the strategy in the form of an opinion letter, and two banks, Deutsche Bank and HVB (among others), provided funds that facilitated the financials so that the tax strategies could be implemented.  In the end, the strategies were determined to be fraudulent tax avoidance schemes and Plaintiffs, who participated in two such strategies—OPIS and BLIPS[3]—now sue the alleged co-conspirators on the theory that the Defendants knew the schemes were unlawful and yet marketed and sold the strategies to them in return for millions of dollars in fees.

---

[2]      On January 4, 2007, Plaintiffs voluntarily dismissed the Complaint as to Defendants KPMG and Sidley Austin Brown & Wood because they were members of a class action which settled against KPMG and Sidley Austin Brown & Wood.  On March 12, 2008, Plaintiff Mark Kottler voluntarily dismissed his Complaint against Deutsche Bank.  As discussed at the May 15, 2008 oral argument before the Court, this March 12, 2008 voluntary dismissal results in a complicated split class action suit.  As the Court understands it, there is a class action for Kottler, Long and Long against HVB and Presidio, and a class action for Kottler (not as an individual but only as a class representative), Long and Long against Deutsche Bank, HVB, and Presidio.  Ultimately, Kottler represents the purchasers of the OPIS tax strategy and the Longs represent the purchasers of the BLIPS tax strategy.

[3]      Plaintiffs participated in OPIS (Offshore Portfolio Investment Strategy) and BLIPS (Bond-Linked Premium Structure).  Plaintiffs provide very little particulars about these strategies other than to claim they were extremely complex and assert that the transactions involved were "kind of done on autopilot" and that the "details are certainly fuzzy to us." (See May 15, 2008 Oral Argument Transcript "Tr." 35:16-17; 35:05.)

## II. The Parties

Plaintiff Mark Kottler participated in the OPIS strategy and Plaintiffs Karen and Robert Long were involved in the BLIPS strategy. Both tax strategies work similarly, involving a complex series of bank-financed transactions in which the taxpayer purchases shares, options, and warrants in foreign entities in order to effectuate tax shelters. The purchasers are individuals who had previously realized a substantial capital gain, which is offset by a planned loss in the foreign investment, thereby rendering their tax liability at or close to zero.

Defendant Deutsche Bank[4] is the largest bank in Germany and one of the largest financial institutions in the world. Its only branch in the United States is in New York. Deutsche Bank allegedly "provided approximately $10.8 billion in lines of credit for OPIS and BLIPS transactions." (Amended Complaint ("Am. Compl.") ¶ 84.) Plaintiffs claim that Deutsche Bank (and all the Defendants alike) knew the tax strategies were fraudulent and yet participated in a scheme to reap millions of dollars in fees from clients like the members of the Class.

Defendant HVB[5] is the second largest bank in Germany and a major global financial institution. It is headquartered in Munich and its presence in the United States consists of a single branch located in New York City. HVB allegedly provided nearly $2.5 billion dollars of credit in support of the tax strategies sold and marketed by KPMG. (Id.)

Defendant Presidio[6] is an investment advisory firm, founded by former KPMG partners, that formed a relationship with KPMG through which Presidio would develop tax-based products, and KPMG would market and sell them to its clients. This relationship continued over

---

[4]      Defendants Deutsche Bank AG and Deutsche Bank Securities, Inc. are collectively referred to as "Deutsche Bank." Deutsche Bank Securities is a Delaware corporation and a subsidiary of Deutsche Bank AG.

[5]      The collective "HVB" Defendants include:  Bayerische Hypo- und Vereinsbank AG (the bank itself), HVB Capital Markets, Inc. (an affiliate controlled by the bank), and HVB Structured Finance, now known as HVB U.S. Finance Inc. (the legal entity that provided loans in connection with the tax strategies at issue).

[6]      Defendants Presidio Advisors, LLC, Presidio Growth, LLC, and TX Presidio Advisors, LLC are collectively referred to as "Presidio."

several years, and the Amended Complaint asserts that Presidio actually developed, or was closely linked to the development of, the tax shelters at issue in this litigation. (Id. ¶ 82.)

Presidio also purportedly acted as a confidential tax advisor to many class members and allegedly had a fiduciary relationship with them.  According to the Amended Complaint, the opinion letters issued by KPMG and/or Brown & Wood "indicated that Presidio acted as 'investment advisor' to the investor and that Presidio had 'designed' an investment 'strategy' (in the OPIS opinion letters) or that Presidio had 'designed' an investment 'program' (in the BLIPS opinion letters)." (Id. ¶ 63.)  Furthermore, the BLIPS opinion letter asserted that "'Presidio acted independently of, and at arm's length from' the bank involved in the transaction," a statement Plaintiffs assert is false and misleading. (Id. ¶ 67.)

According to the Amended Complaint, "the involvement of [both Deutsche Bank and HVB] was critical to the success of the fraudulent scheme." (Id. ¶ 86.)  Plaintiffs claim that the fraudulent tax scheme required the execution of "exotic financial transactions that no financial institution would undertake in the ordinary course of business." (Id.)  As a result, Plaintiffs assert that the entire scheme would not have been possible but for the participation of the banks as lenders.  Plaintiffs further contend that HVB knew that the tax schemes were fraudulent but still approved false representations about their role in the schemes, and agreed that these false representations could be communicated to the purchasers of the tax scheme through the opinion letters issued by KPMG and Brown & Wood. (Id. ¶ 87.)

In addition, HVB is accused of generating false reports, "reversing" bank transactions in connection with the tax shelters to make them appear as though they did not occur at all, and cooperating with Deutsche Bank by accepting money and lending it to tax shelter clients in

exchange for fees and profits (in order to minimize Deutsche Bank's exposure to increased

reputational risk and to legitimize the legality of the tax shelters). (<u>Id.</u> ¶ 88.)

### III.  Senate Investigation, Criminal Investigations, and Civil Settlements

In October 2002, the U.S. Senate Permanent Subcommittee on Investigations of the

Committee of Governmental Affairs ("Senate Subcommittee") began an investigation into the

development, marketing, and implementation of abusive and unlawful tax shelters, including

OPIS and BLIPS.  In November 2003, the Senate Subcommittee held two days of hearings and

issued an initial report on its investigation.  A little more than a year later, on February 8, 2005,

the Senate Subcommittee issued its final report (the "Report").  The Amended Complaint lists

six general findings from the Report, almost entirely related to the unlawful activity of KPMG

and Brown & Wood.[7]  (<u>Id.</u> ¶¶ 6-8.)  Indeed it is the Report which frames the substantive basis for

the complaint.  The other substantive basis for the complaint is the criminal proceedings against

some of the co-conspirators.[8]

In August 2005, Domenick DeGiorgio, the HVB vice-president principally responsible

for HVB's participation in the tax strategies, pleaded guilty to two counts of conspiracy to

defraud the IRS, wire fraud, and tax evasion.  DeGiorgio admitted that the BLIPS strategy

"lacked economic justification, was described in a misleading fashion, and was essentially a

'sham' transaction." (<u>Id.</u> ¶ 105.)  As part of that plea, he admitted that he "knowingly

participated in HVB's making sham loans in which no money left the bank, the loans were never

funded, false paperwork was created, and that he knew that BLIPS was falsely described as a

---

[7]     The Amended Complaint devotes significant space to discussing the criminal proceedings brought against KPMG relating to tax strategies that the IRS declared unlawful.  Plaintiffs describe that "in August 2005, KPMG agreed to pay $456 million as part of a deferred prosecution agreement relating to its development, promotion, and implementation of certain fraudulent tax shelters, including OPIS and BLIPS." (Am. Compl. ¶ 10.)

[8]     The criminal action resulted in guilty verdicts for tax evasion on December 17, 2008 against a partner at Brown & Wood and against two former KPMG employees who left the accounting firm to form Presidio. <u>See</u> Lynnley Browning, <u>3 Convicted in KPMG Tax Shelter Case</u>, N.Y. Times, Dec. 18, 2008, at B11.

long-term leverage transaction when in fact, it was a short-term unleveraged transaction." (Id. ¶ 11.)

In February 2006, HVB entered into a deferred prosecution agreement under which it agreed to pay nearly $30 million in fines, restitution and penalties.  Pursuant to this agreement, HVB admitted criminal misconduct and stated that it:

> admits and accepts that . . . through the conduct of certain HVB employees, during the period from 1996 through 2003, HVB . . . participat[ed] in and implement[ed] fraudulent tax shelter transactions, including . . . ("BLIPS") . . . HVB personnel engaged in conduct that was unlawful and fraudulent, including:  (i) agreeing to participate in fraudulent tax shelter transactions; and (ii) preparing and signing false and fraudulent factual recitations, representations, and documents as part of the documentation underlying the shelters.

(Id. ¶ 14.)

## IV.  Procedural History

On September 2, 2005, Plaintiffs, both individually and on behalf of others similarly situated, filed a class action suit against KPMG, Brown & Wood, Deutsche Bank, HVB; and Presidio.  On December 23, 2005, this Court issued an order staying the matter pending resolution of a similar class action suit in New Jersey, Simon v. KPMG, No. 05 Civ. 3189, 2006 WL 1541048 (D.N.J. June 2, 2006).  On January 4, 2007, Defendants KPMG and Brown & Wood were voluntarily dismissed from the action with prejudice because of the settlement of the Simon action.  On that same date, the stay was lifted and the Plaintiffs were given leave to amend the Complaint, which they did on February 9, 2007.

The Amended Complaint was filed, naming Deutsche Bank, Presidio, and HVB as defendants.  The Defendants separately moved to dismiss the Amended Complaint between March 19, 2007 and May 3, 2007, and the Plaintiffs opposed those motions.  On March 12, 2008,

while the motions were pending before this Court, Mark Kottler, individually, voluntarily dismissed his claims against Deutsche Bank.

## DISCUSSION

### I.  Standard for Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint," and construe the complaint in the light most favorable to the plaintiff.  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1975 (2007) (citation and quotation marks omitted).  But mere "formulaic recitation of the elements of a cause of action" will not suffice; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.  To survive a motion to dismiss, courts require "enough facts to state a claim to relief that is plausible on its face." Id. at 1974; see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.") (emphasis added).  The Court may dismiss a claim where it "appears beyond doubt" that the plaintiff can prove no facts that would entitle him to relief.  Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted).  Rule 9(b) of the Federal Rules of Civil Procedure sets forth a heightened pleading requirement for complaints alleging fraud.  See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Each Defendant moves separately to dismiss individual claims and the Amended Complaint in its entirety, while also incorporating their co-Defendants' arguments into their own separate motion.  The Court turns now to the analysis of the motions to dismiss.

## II.  RICO Claim

Plaintiffs allege that all defendants violated the RICO statute, 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).[9]  A person who suffers injury as a result of a RICO violation may sue an entity pursuant to 18 U.S.C. § 1964.  To state a claim under §1962(c), a plaintiff must allege that a defendant engaged in (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity (5) resulting in (6) injury to business or property. Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  Furthermore, the requirements of Section 1962(c) must be established as to each individual defendant. See De Falco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001).

A RICO enterprise can be "any individual, partnership, corporation, association, or other legal entity, [or] any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4), but the enterprise "must be distinct from each of the 'persons' conducting it." Zito v. Leasecomm Corp., No. 02 Civ. 8074 (GEL), 2004 WL 2211650, at *6 (S.D.N.Y. Sept. 30, 2004) (quoting Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 343-44 (2d Cir. 1994)).  The "pattern of racketeering activity" must consist of "at least two

---

[9]     While Defendants argue that the Private Securities Litigation Reform Act of 1995 ("PSLRA") bars Plaintiffs' resort to RICO, the argument is too broad.  Plaintiffs do not allege a securities fraud, but rather a tax fraud.  There was nothing per se fraudulent from a securities standpoint about the financial mechanism and schemes used to generate the tax losses.  While the alleged fraud could not have occurred without the sale of securities at the inflated basis (which created the artificial loss to offset Plaintiffs' major capital gains), it is inaccurate to suggest that the actual purchase and sale of securities were fraudulent.  In actuality, the securities performed exactly as planned and marketed; it was the overall scheme that allegedly defrauded the Plaintiffs and Class Members.  It is worth noting that none of the criminal prosecutions alleged a violation of the securities laws.  This Court as well finds that the alleged fraud here involved a tax scheme, with the securities transactions only incidental to any underlying fraud.  Accordingly, this Court will not apply the PSLRA bar to Plaintiffs' RICO claims.

'predicate acts' of racketeering activity within ten years, where the 'acts' are certain violations of state or federal law as set forth in § 1961(1)." <u>Zito</u>, 2004 WL 2211650 at *6.

Plaintiffs claim that Defendants and co-conspirators "combined and conspired to form an ongoing organization and 'enterprise' within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) whose purpose was to sell fraudulent tax products for millions of dollars." (Am. Compl. ¶ 124.) The predicate acts alleged are mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343— Plaintiffs allege that "Defendants employed the Postal Service and/or private or commercial interstate carriers and/or interstate communications to send their retainer and engagement letters, invoices, opinion letters, and investment advice to Plaintiffs, and others, and to receive from Plaintiffs and others payment of fees and associated expenses." (Am. Compl. ¶ 126.)

Defendants claim that Plaintiffs have not sufficiently alleged a cognizable injury or proximate causation, both of which are requisite elements of RICO standing. <u>Sedima</u>, 473 U.S. at 496. Defendants also assert that Plaintiffs fail to allege a pattern of racketeering activity (neither open- or closed-ended continuity) or a cognizable RICO enterprise. For the reasons set forth below, the Court finds that Plaintiffs have failed to allege a specific enterprise distinct from the pattern of racketeering.

In order to state a claim for RICO, the plaintiff "must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.'" <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981). The enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts . . . ." <u>Id.</u> "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." <u>Id.</u>

Plaintiffs fail to allege an enterprise that is separate and distinct from the fraudulent tax shelter scheme allegedly engaged in by the Defendants and the co-conspirators.  Although Plaintiffs, in their briefs and at oral argument on May 15, 2008, argue that the Defendants did not "come together by chance and solely for purposes of committing this particular tax fraud," (see May 15, 2008 Oral Argument Transcript "Tr." 38:20-21), that argument is unavailing.  Plaintiffs claim that "the lawyers and the accountants certainly worked together with these plaintiffs and with other unnamed class members configuring out tax solutions," (id. 39:12-14) but the allegations in the Amended Complaint fall short of alleging a RICO enterprise that existed separate and apart from any pattern of racketeering activity in which the Defendants and co-conspirators engaged.  The enterprise and the pattern in this case are one and the same; Defendants and co-conspirators joined forces for the purpose of creating these allegedly fraudulent tax shelters and Plaintiffs seem to concede as much in their opposition to this motion to dismiss: "Presidio and KPMG entered into a formal operating agreement with respect to the sale and promotion of unlawful tax shelters . . . Furthermore, Presidio used its contacts at Deutsche Bank and HVB to solicit and discuss their essential participation in the fraudulent scheme." (Plaintiff's Memorandum of Law "Pl.'s Mem." 2.)  The Defendants and co-conspirators did not exist as an association in fact separate and apart from the alleged RICO activity; rather they came together strictly for the purpose of creating these allegedly fraudulent tax shelters.  The non-existence of a separate enterprise is fatal to Plaintiffs' RICO claim. Accordingly, the Defendants' motion to dismiss the RICO claim is granted.

### III.  Statute of Limitations Defense for OPIS-Based Claims

Presidio and Deutsche Bank assert a statute of limitations affirmative defense against all of Plaintiffs' OPIS-based claims[10] and against the Plaintiffs' RICO claims.  Presidio—and Deutsche Bank, which incorporates Presidio's arguments on this topic—argues that the fraud claim is time-barred, and that once this underlying claim is dismissed, all other OPIS-based fraud and fiduciary duty claims fall with it.

The statute of limitations for fraud and for aiding and abetting fraud in New York is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).  Civil RICO claims are subject to four-year limitations periods, which "run from the time plaintiffs discovered, or should have discovered, their injury." Griffin v. McNiff, 744 F. Supp. 1237, 1255 (S.D.N.Y. 1990).

In this case, the transaction occurred, at the latest, on November 10, 1998, when Plaintiff Kottler signed a confirmation for his OPIS transaction with Deutsche Bank. (See Declaration of Lawrence Hill "Hill Decl." Ex. 10.)  Plaintiffs filed the original complaint on September 2, 2005. Presidio argues that under the first part of the § 213(8) test, Plaintiffs should have filed the complaint within six years of November 10, 1998, in other words before November 10, 2004.

Presidio also argues that even under the second part of the § 213(8) test—discovery with reasonable diligence—Plaintiffs did not file the complaint in time because Plaintiffs were put on notice of the alleged fraud well before September 2, 2003, two years prior to filing the complaint.  Presidio notes that the IRS issued a notice informing taxpayers that OPIS was an abusive tax shelter on August 31, 2001. (Hill Decl. Ex. 3.)  This IRS release put Plaintiffs on

---

[10]    Presidio and Deutsche Bank do not challenge the BLIPS-based claims under a statute of limitations affirmative defense because the BLIPS transactions occurred later than the OPIS transactions and within the relevant statute of limitations time period. (See Declaration of Lawrence Hill "Hill Decl." Ex. 11; Tr. 30:22-31:05.)

inquiry notice of KPMG's fraudulent scheme, Presidio argues, and Plaintiffs could have discovered the fraud at that point with reasonable diligence.

Presidio also claims that Plaintiffs should have been put on notice by newspaper articles in July 2001 in the New York Times and Wall Street Journal which reported on the Treasury Department shutting down unnamed tax shelters matching the description of OPIS. See David Cay Johnston, Tax Shelter That Involves Capital Gains Is Disallowed, N.Y. Times, July 27, 2001, at C4; John D. McKinnon, Treasury Issues New Rules to Shut Major Tax Shelter, Wall St. J., July 27, 2001, at A2.

Finally, there is clear evidence that Plaintiff Kottler knew of the alleged fraud by early 2002 because the IRS audited his 1998 tax return at that time in relation to an investigation of the OPIS tax strategy.  Kottler himself disclosed this fact in a complaint filed in Florida state court in 2004. See Complaint in Kottler v. KPMG LLP, 2004 CA 000372 (Fla. Cir. Ct., 15th Jud. Cir., Palm Beach Co., Jan. 13, 2004).[11]  The Florida complaint states that Kottler received a call on February 9, 2002, from Steve Messing, Kottler's contact at KPMG, who informed Kottler that the IRS was investigating the OPIS strategy. (Id. ¶ 47.)  The complaint further states that on February 26, 2002, after consulting with his private attorney, Kottler contacted the IRS and expressed his desire to disclose his participation in the OPIS scheme. (Id. ¶ 48.)  On March 28, 2002, the IRS responded with a formal notice stating that Kottler's 1998 tax return was under examination. (Id.)  The complaint states that Kottler cooperated with the IRS over the next several months as the IRS determined his back taxes. (Id.)  On June 12, 2003, the IRS sent Kottler a notice detailing the $4.6 million in back taxes and interest that he owed the government. (Id. ¶ 49.)

---

[11]      A copy of this case was handed to the Court during oral argument on May 15, 2008 by the Defendants, without objection by the Plaintiffs. (See Tr. 06:20-07:04.)

A plaintiff in a fraud case is charged with knowledge of the fraud for the purposes of the statute of limitations when the plaintiff discovered or should have discovered the alleged fraud. "Once plaintiff has notice of the fraud, '[he] is charged with whatever knowledge an inquiry would have revealed.'" Foxley v. Sotheby's Inc., 893 F. Supp. 1224, 1231 (S.D.N.Y. 1995) (quoting Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir. 1992)); see also Salinger v. Projectavision, Inc., 972 F. Supp. 222, 229 (S.D.N.Y. 1997) (noting that for inquiry notice, "[t]he plaintiffs need not be able to learn the precise details of the fraud, but they must be capable of perceiving the general fraudulent scheme based on the information available to them"). When determining what types of communications put a party on inquiry notice of fraud, "courts should evaluate factors such as 'the content of the notice, the nature of the loss, and the nature of the fraud.'" Nathel v. Siegal, No. 07 Civ. 10956 (LBS), 2008 WL 4684171, at *4 (S.D.N.Y. Oct. 20, 2008) (quoting 131 Main St. Assocs. v. Manko, 897 F. Supp. 1507, 1515-16 (S.D.N.Y. 1995)).

We need not debate the narrow factors that go into determining whether a particular IRS notice or newspaper article is sufficient to put a party on inquiry notice. Here it is uncontested that Kottler certainly knew of the fraud by June 12, 2003 when he received a tax bill disallowing the shelter. Indeed he had notice no later than February, 2002. He knew then that he was involved in a fraudulent tax scheme: he had received specific notice, he was subjected to an audit, and the audit came to the conclusion that Kottler owed $4.6 million in back taxes. All these facts were alleged by Kottler himself in a complaint filed in Florida state court in 2004. Kottler clearly had notice of the fraud more than two years prior to September 2, 2005, when he filed his Complaint in this action. Counsel's suggestion that Kottler really did not know of the

fraud until November 2003, the time when the Senate Subcommittee held hearings and issued its initial report, is completely inaccurate.[12]

The Court finds that the Plaintiffs did not file their complaint within six years from the date that the cause of action accrued, and that Plaintiffs were on inquiry notice of the fraudulent tax scheme more than two years prior to filing their complaint. Accordingly, Plaintiffs' cause of action for fraud based on the OPIS transactions is barred by the statute of limitations. The Court finds that the Plaintiffs' RICO claim is not time-barred, however, as it is not clear that Plaintiffs were on notice more than four years prior to filing their complaint on September 2, 2005. The Court has already dismissed Plaintiffs RICO claims on other grounds, however.

Since the OPIS-based claims are time-barred, the balance of the alleged causes of action sounding in fraud, including aiding and abetting fraud, conspiracy to commit fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty all must fail. The claims for aiding and abetting fraud and for conspiracy to commit fraud are time-barred because the underlying fraud claim is an essential element of the claims and it has been dismissed. See Schlotthauer v. Sanders, 545 N.Y.S.2d 197, 199 (App. Div. 2nd Dept. 1989) (claim for conspiracy to commit fraud time-barred because underlying fraud time-barred). Plaintiffs' claims of breach of fiduciary duty and aiding and abetting such breach are also time-barred because allegations of breach of fiduciary duty that are based upon claims of fraud are subject to

---

[12]     The Court also rejects Plaintiffs' claims that the statute of limitation should be tolled because of fraudulent concealment by the defendants. Assuming that Kottler or his lawyer did not attempt to mislead the Court, the Plaintiffs fail to plead fraudulent concealment with the required specificity. A party claiming to be the victim of fraudulent concealment must specify: "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (citation omitted). Plaintiffs fail to specify how the Defendants concealed their fraud from the Plaintiffs directly; Plaintiffs merely contend that KPMG provided a false and incomplete response to a Senate Subcommittee subpoena in 2003 and that a Deutsche Bank official falsely testified to a Senate Subcommittee in 2003. (See Am. Compl. ¶¶ 102, 103.) This type of allegation is insufficient to establish fraudulent concealment, see Arnold v. KPMG LLP, 543 F. Supp. 2d 230, 237 (S.D.N.Y. 2008), especially where it is clear that Kottler already knew the tax avoidance scheme was fraudulent.

the same statute of limitations as the fraud claim in New York.  See Kaufman v. Cohen, 760

N.Y.S.2d 157, 164 (App. Div. 1st Dept. 2003).  Thus, the breach of fiduciary duties claims are

barred by the same six-year/two-year restrictions as the fraud claims, and must also be dismissed.

## IV.  Remaining BLIPS-Based Claims

### A.  Fraud

The Court has already dismissed the OPIS-based claims as time-barred and the RICO

claim for failure to allege an enterprise separate and apart from the conspiracy alleged.  The

Court now turns to the BLIPS-based common-law fraud and breach of fiduciary duty claims, as

well as the claim for unjust enrichment.

In New York, a claim for fraud consists of five elements: "(1) misrepresentation of a

material fact; (2) the falsity of that misrepresentation; (3) scienter, or intent to defraud; (4)

reasonable reliance on that representation; and (5) damage caused by such reliance." Granite

Partners, L.P. v. Bear, Stearns & Co., 17 F. Supp. 2d 275, 286 (S.D.N.Y. 1998).  Before

analyzing the substance of Plaintiffs' fraud claim, the Court will consider whether Plaintiffs have

satisfied the heightened pleading standard under Federal Rule of Civil Procedure 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure governs pleading in fraud actions

generally, providing that "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); In re Pfizer Inc. Sec. Litig.,

No. 04 Civ. 9866 (LTS), 2008 WL 2627131, at *6 (S.D.N.Y. July 1, 2008).   Particularity

requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999)

(internal quotation marks and citation omitted); Coutts Bank,193 F.3d at 88.

Allegations of fraud must be pled with sufficient particularity to "to serve the three goals of Rule 9(b), which are (1) to provide a defendant with fair notice of the claims against him or her; (2) to protect a defendant from harm to reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of 'strike suits'." <u>Am. Fin. Int'l. Group—Asia, L.L.C. v. Bennett</u>, No. 05 Civ. 8988 (GEL), 2007 WL 1732427, at *6 (S.D.N.Y. June 14, 2007) (citing <u>DiVittorio v. Equidyne Extractive Indus.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987)).  Moreover, "[w]here there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud." <u>Alnwick v. European Micro Holdings, Inc.</u>, 281 F. Supp. 2d 629, 639 (E.D.N.Y. 2003) (plaintiff must "identify which defendant caused each allegedly fraudulent statement to be spoken, written, wired or mailed, and to whom the communication was made; when the communication was made; and how it advanced the fraudulent scheme").

Plaintiffs' allegations here are insufficient to plead fraud under Rule 9(b).  The Amended Complaint relies completely on HVB's Deferred Prosecution Agreements and the U.S. Senate's Subcommittee Report to tell the story of an alleged conspiracy, and the Plaintiffs have failed to lay out the facts as to each Defendant in a way that satisfies the heightened pleading standard of Rule 9(b).  A substantial part of the Amended Complaint concerns the fraudulent behavior of the co-conspirators, KPMG and Brown & Wood, who have not been parties to this suit since January 2007. (<u>See</u>, <u>e.g.</u> Am. Compl. ¶¶ 38-74.)  What KPMG and Brown & Wood did, what Congress discovered about their behavior, and even what they admitted to doing in furtherance of an allegedly fraudulent scheme does not apply in a claim for fraud against Deutsche Bank, HVB, and Presidio.  Plaintiffs repeatedly fail to identify the speaker of allegedly false statements, to allege when and to whom these statements were made, and do not allege harm in a remotely

adequate fashion.  Plaintiffs' statement that "Class Members have suffered considerable losses" (Am. Compl. ¶ 5) simply does not satisfy the heightened pleading standard, nor do the conclusory allegations Plaintiffs rely on throughout the Amended Complaint.

The first requirement of a fraud claim is to plead the claim with the requisite specificity, and the Plaintiffs have not satisfied that requirement.  It is unnecessary to consider the substance of the fraud-based claims because the claims do not satisfy the Rule 9(b) standard.

### B.  Civil Conspiracy to Defraud

To state a proper claim for conspiracy to defraud the plaintiff must allege both a primary tort and also show the four elements of a conspiracy:  "(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Best Cellars Inc. v. Grape Finds at Dupont, Inc., 90 F. Supp. 2d 431, 446 (S.D.N.Y. 2000).  Courts in this district are divided as to whether Rule 9(b) applies in this situation.  Compare Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424, 459-60 (S.D.N.Y. 2008) ("Although there appears to be some uncertainty on this issue, it is the law of the Second Circuit that while fraud must be alleged with particularity, the facts constituting a conspiracy need not."), with De Atucha v. Hunt, 128 F.R.D. 187, 189 (S.D.N.Y. 1989) ("[i]n actions alleging conspiracy to defraud . . . the particularity requirements of Rule 9(b) must be met.") (quotation and citation omitted).  The Court does not hold the Plaintiffs to the stricter Rule 9(b) standards on the conspiracy claim, but rather the normal Rule 8(a) standards. See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy . . . Even so, the complaint must allege some factual basis for a finding of a conscious agreement among the defendants.").

This Court has already dismissed the fraud claim against the Defendants for failure to allege their fraudulent acts with specificity.   The Amended Complaint, however, contains allegations of an underlying tort of fraud by KPMG and Brown & Wood, parties no longer Defendants in this suit. (See Am. Compl. ¶¶ 51-74.)  The issue is whether Plaintiffs have properly alleged the elements of a conspiracy to show that Deutsche Bank, HVB, and Presidio conspired to take part in KPMG and Brown & Wood's underlying fraud.

The Amended Complaint states that Presidio "actively participated in marketing and implementing the Tax Strategies" and "made numerous presentations to KPMG clients related to FLIP, OPIS, and BLIPS." (Id. ¶ 82.)  The Amended Complaint also alleges that Presidio "initiated the development of BLIPS in the fall of 1998" and that Presidio and KPMG met on April 30 and May 1, 1999, to discuss details of the BLIPS shelter. (Id. ¶¶ 80-81.)  Further, the Amended Complaint alleges that Presidio, along with KPMG, made sales presentations to members of the Class about the Tax Strategies and that Class members purchased the strategies in reliance on those presentations. (Id. ¶ 52.)

As to Deutsche Bank and HVB, the Amended Complaint states that the banks' role in the conspiracy was to provide the loans that supported the tax schemes—specifically, the Amended Complaint alleges that Deutsche Bank provided approximately $10.8 billion in credit and that HVB provided $2.5 billion. (Id. ¶ 84.)  To support the conspiracy, Deutsche Bank allegedly approved false representations about its connections with the Co-Conspirators and worked closely with the Co-Conspirators by allowing KPMG representatives to work out of the Deutsche Bank offices "to facilitate transactions and paperwork." (Id. ¶¶ 87, 90.)  The Amended Complaint also specifies other connections and instances of cooperation between KPMG, Deutsche Bank, and Presidio. (Id. ¶¶ 91-95.)

18

Taken all together, the Amended Complaint sufficiently alleges that Presidio, Deutsche Bank, and HVB intentionally took overt acts in furtherance of KPMG's scheme to sell faulty BLIPS tax schemes to the Class Members.  While the allegations contained in the Amended Complaint are somewhat broad, the Plaintiffs have alleged enough facts to survive a motion to dismiss. See WestPoint-Pepperell, 945 F.2d at 44 (the court may dismiss a claim on motion to dismiss only where it "appears beyond doubt" that the plaintiff can prove no facts that would entitle him to relief) (citation omitted).  The Defendants' motion to dismiss Plaintiffs' claim of conspiracy to defraud against Deutsche Bank, HVB, and Presidio is denied, with respect to the BLIPS-related transactions.

### C.  Aiding and Abetting Fraud

Under New York law, the elements of a claim for aiding and abetting fraud are: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." Gabriel Capital, L.P. v. NatWest Fin., Inc., 94 F. Supp. 2d 491, 511 (S.D.N.Y. 2000) (citation and quotation omitted).  The "substantial assistance" requirement of the third prong exists "where a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed." Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) (internal quotations and citation omitted).  The actions of the abettor must also proximately cause the harm to satisfy the "substantial assistance" prong. See McDaniel v. Bear Stearns & Co., 196 F. Supp. 2d 343, 352 (S.D.N.Y. 2002).  Finally, "Rule 9(b)'s requisite pleading with particularity applies equally to claims for fraud and aiding and abetting fraud." Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2000 WL 781081, at *5 (S.D.N.Y. June 16, 2000).

Plaintiffs claim that the Defendants were aware of the scheme to defraud investors and provided substantial assistance by making false statements and failing to correct other statements that they knew to be false. (See Am. Compl. ¶ 142.)  Plaintiffs describe Presidio's role in the alleged fraud in paragraphs 76 through 83 of the Amended Complaint.  They allege that Presidio had close relations with KPMG, that Presidio was instrumental in forming the BLIPS tax shelters, and that Presidio "actively participated in marketing and implementing the tax strategies." (Id. ¶¶ 76-83.)  Plaintiffs' allegations of the role of Deutsche Bank and HVB is described in paragraphs 84 through 100 of the Amended Complaint.  Plaintiffs allege that Deutsche Bank provided $10.8 billion and HVB $2.5 billion in lending that was critical to facilitating the illegal tax shelters. (Id. ¶ 84.)  Plaintiffs allege that "Deutsche Bank and HVB were well aware that the Tax Strategies were fraudulent" and that the banks created false paper trails to cover up their wrongdoing. (Id. ¶ 88.)  The Amended Complaint also alleges that Deutsche Bank worked closely with KPMG and Presidio to execute the Tax Strategies scheme. (Id. ¶ 91-94.)

The underlying fraud alleged here is the fraud by KPMG and Brown & Wood.  Plaintiffs satisfy the elements of a claim for aiding and abetting fraud because they allege that Deutsche Bank, HVB, and Presidio knew of the fraud.  For instance, Plaintiffs allege that Deutsche Bank and HVB created false paper trails to minimize any appearance of involvement in the tax shelters. (Id. ¶ 88.)  Plaintiffs allege that Presidio was the developer of the BLIPS tax strategy, so it only follows that it must have known of the fraud. (Id. ¶ 80.)  Finally, Plaintiffs allege substantial assistance by Deutsche Bank, HVB, and Presidio in achieving the fraud.  The Amended Complaint adequately alleges that the parties affirmatively assisted and were the proximate cause of any harm suffered by the Plaintiffs.  The Defendants' motion to dismiss the

claim of aiding and abetting fraud against Deutsche Bank, HVB, and Presidio is denied, with respect to the BLIPS-related transactions.

### D.  Breach of Fiduciary Duties Against Presidio

Plaintiffs claim that Presidio had a fiduciary relationship with them because Presidio served as a confidential financial advisor.  Plaintiffs claim that they "reasonably relied on Presidio's superior expertise in financial and tax matters . . . [and that] Presidio knowingly violated these fiduciary duties by participating in a scheme meant to enrich Presidio and its Co-Conspirators at the expense of Presidio's clients." (Am. Compl. ¶ 149.)  As a result of the breach of the fiduciary duty owed to Plaintiffs, the Class suffered "substantial damages." (Id.)

Presidio predictably disclaims any fiduciary duty owed to the Plaintiffs.  Presidio argues that Plaintiffs fail to properly allege that Presidio owed Plaintiffs a duty as a financial advisor.  The Court finds that Plaintiffs' allegations do not suffice to prove the existence of any fiduciary duty owed by Presidio; without the existence of a duty, there can be no breach.

The elements of a claim for breach of fiduciary duty are:  (1) a fiduciary relationship between the parties and (2) the fiduciary duty has been breached. See Cramer v. Devon Group, Inc., 774 F. Supp. 176, 184 (S.D.N.Y. 1991).  In determining when a fiduciary relationship exists, "New York courts conduct a fact-specific inquiry into whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge." Facella v. Fed'n of Jewish Philanthropies of New York, Inc., No. 98 Civ. 3146 (DAB), 2004 WL 1700616, at *6 (S.D.N.Y. July 30, 2004) (citation omitted).  As such, courts cannot determine the existence of a fiduciary relationship "by recourse to rigid formulas." Scott v. Dime Sav. Bank, 886 F. Supp. 1073, 1078 (S.D.N.Y. 1995) (citing Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., 767 F. Supp. 1220, 1231 (S.D.N.Y. 1991).

The issue for the Court is whether Presidio's interactions with Plaintiffs created a fiduciary duty to the Plaintiffs.  Plaintiffs claim that Presidio acted as a "confidential tax advisor" to the Class Members. (Am. Compl. ¶ 24.)  Presidio "actively participated in marketing and implementing the Tax Strategies." (Id. ¶ 82.)  Plaintiffs also claim that Presidio owed a fiduciary duty to Plaintiffs because it "had a confidential relationship as a financial advisor." (Id. ¶ 149.)  But the only direct contact with Presidio that Plaintiffs have pled is that "on or about October 12, 1998, John Larson, of Presidio, mailed to Plaintiff Kottler several documents relating to his participation in the OPIS tax strategy." (Id. ¶ 54.)

Presidio's alleged fiduciary duty to Plaintiffs must be based on something more than conclusory allegations to connect the Plaintiffs' decision to invest in the tax strategies with actions by Presidio. "A cause of action based upon breach of fiduciary duty rests not on the violation of a generalized professional standard, but on the abuse of a particularized relationship of trust." Wende C. v. United Methodist Church, 776 N.Y.S.2d 390, 397 (App. Div. 4th Dept. 2004).  Plaintiffs have simply shown no connection between themselves and Presidio, other than the mailing of documents to Plaintiff Kottler about the OPIS tax strategy on October 12, 1998.  Plaintiffs do not specify what information these documents contained or how these documents caused any of Plaintiffs to rely upon any knowledge or expertise that Presidio might have had.

Mere expertise in a subject is not enough to create a fiduciary duty. See Mechigian v. Art Capital Corp., 612 F. Supp. 1421, 1431 (S.D.N.Y. 1985) (no fiduciary duty where defendant had particular expertise as art dealer).  Plaintiffs must show that they and Presidio established "a relationship 'founded upon trust or confidence reposed by one person in the integrity and fidelity of another . . . in which influence has been acquired and abused, in which confidence has been reposed and betrayed.'" Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 459

(S.D.N.Y. 2006) (quoting <u>Penato v. George</u>, 383 N.Y.S.2d 900, 904 (App. Div. 2nd Dept. 1976).

Plaintiffs attempt to establish this relationship of trust through conclusory statements by calling

Presidio a "confidential tax advisor" and stating that they and Presidio "had a confidential

relationship as a financial advisor." (<u>See</u> Am. Compl. ¶¶ 24, 149.)  These vague allegations fall

well short of adequately pleading that a fiduciary relationship existed between Plaintiffs and

Presidio.  Without such a fiduciary relationship, Presidio cannot have breached a fiduciary duty.

Accordingly, Plaintiffs' claim against Presidio for breach of fiduciary duty is dismissed.

### E.  Aiding and Abetting Breach of Fiduciary Duties

Plaintiffs bring a claim of aiding and abetting breach of fiduciary duty against all

Defendants.  Plaintiffs allege that each Defendant was aware that KPMG and Brown & Wood

owed fiduciary duties to Plaintiffs and were violating those duties by selling Plaintiffs the tax

strategies. (<u>See</u> Am. Compl. ¶ 154.)  Further, Plaintiff claims that Defendants substantially

assisted the violation of those duties, and that Plaintiffs suffered "substantial damages." (<u>Id.</u>)

Under New York law, there are three elements to a claim for aiding and abetting breach

of fiduciary duty:  (1) a breach of fiduciary obligations to another of which the aider and abettor

had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3)

plaintiff suffered actual damages as a result of the breach. <u>In re Sharp Int'l. Corp.</u>, 403 F.3d 43,

49 (2d Cir. 2005) (internal citations and quotations omitted).  As to the knowledge requirement,

"a person knowingly participates in a breach of fiduciary duty only when he or she provides

'substantial assistance' to the primary violator." <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 294

(2d Cir. 2006) (citation and quotation omitted).  Further, "[a]iding and abetting liability arises

only when plaintiffs' injury was 'a direct or reasonably foreseeable result' of the complained-of

conduct." Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 249 (S.D.N.Y. 1996) (quoting Morin v. Trupin, 711 F. Supp. 97, 112 (S.D.N.Y. 1989)).

The Court has already dismissed Plaintiffs' claim against Presidio for breach of fiduciary duty, and Plaintiffs claim no breach of fiduciary duty by Deutsche Bank or HVB, so the aiding and abetting claim must be tied to allegations of a breach of an underlying duty owed by KPMG or Brown & Wood.  The Amended Complaint adequately alleges that KPMG, as tax advisors, and Brown & Wood, as legal advisors, established the type of relationship where "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." Mazzaro de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381, 392-93 (S.D.N.Y. 2007) (citation and quotation omitted).  The Amended Complaint also alleges a breach of KPMG and Brown & Wood's duty.  For instance, the Amended Complaint alleges that KPMG produced opinion letters "falsely describing the transactions comprising the Tax Strategies and falsely asserting that the Tax Strategies were legitimate." (Am. Compl. ¶ 75.)  Additionally, Brown & Wood "similarly provided opinion letters falsely asserting that the Tax Strategies were legitimate." (Id.)

The issue is whether Plaintiffs properly allege that Deutsche Bank, HVB, and Presidio aided and abetted KPMG and Brown & Wood's breach of fiduciary duties.  The Court finds that Plaintiffs have done so.  Through many of the same allegations that support their claim for aiding and abetting fraud (see supra Discussion Section IV(C)), Plaintiffs have adequately pleaded that Deutsche Bank, HVB, and Presidio knowingly participated in the tax shelter scheme and gave substantial assistance to KPMG and Brown & Wood.  Accordingly, the Defendant's motion to dismiss the claim of aiding and abetting breach of fiduciary duty against Deutsche Bank and Presidio is denied, with respect to the BLIPS-related transactions.

### F.  Unjust Enrichment

Plaintiffs' claim for unjust enrichment alleges that "[i]n connection with the fraudulent tax shelter scheme, each of the Defendants received moneys paid by Class Members, purportedly for, among other things, the provision of professional services," and that "[a]s a result of Defendants' misconduct, Plaintiffs and the Class suffered substantial losses." (Am. Compl. ¶ 145.)  Plaintiffs claim that each Defendant was "unjustly enriched at the expense of the Class Members . . . [and] should, therefore, not be entitled to retain any of these moneys and should be required to repay all fees and other payment so received from the Class." (Id. ¶ 146.)  Defendants argue that Plaintiffs cannot make out a claim for unjust enrichment because the agreement between the Long Plaintiffs and Presidio and Deutsche Bank was governed by a contract, thus barring the Plaintiffs from recovering under a claim of unjust enrichment.

Under New York law, to "sustain a claim for unjust enrichment, a plaintiff must establish '(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff.'" State Farm Mutual Automobile Insurance Company v. CPT Medical Services, P.C., 375 F. Supp. 2d 141, 154 (E.D.N.Y. 2005) (quoting Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir. 2001)).  Courts have not allowed claims for unjust enrichment, however, where there is a valid and enforceable written contract governing the subject matter of the dispute. See Valley Juice Ltd. v. Evian Waters of France, Inc., 87 F.3d 604, 610 (2d Cir. 1996) ("[T]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.") (quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987)); Granite Partners, 17 F. Supp. 2d at 312.  The

theory behind this ban is that "[b]argained-for benefits cannot be deemed to unjustly enrich a contracting party." Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 767 F. Supp. 1269, 1284 (S.D.N.Y. 1991).

Defendants argue that the agreement with the Longs—the BLIPS purchasers—was governed by a contract, thus the Plaintiffs cannot bring an unjust enrichment claim. Specifically, Deutsche Bank points to a September 9, 1999 Representation Letter signed by Karen Long on behalf of the Karen S. Long 1999 Trust, and a Customer's Agreement signed by Ms. Long on behalf of Daly Ventures LLC on September 21, 1999, whereby Plaintiff Long warranted that Deutsche Bank did not establish, promote, or guarantee any representation about the BLIPS plan. (See Hill Decl. Ex. 11, 14.)

Defendants have not shown that the signed documents they reference are valid and enforceable written contracts that fully govern the subject matter of the dispute. The subject matter of this case is whether Defendants were involved in fraudulently causing the Plaintiffs to invest in tax shelters. The Representation Letter and Customer's Agreement referenced by Defendants do not convince the Court that, at this early stage of pleading, the documents presented by the Defendants "clearly cover[] the dispute between the parties." Clark-Fitzpatrick, 516 N.E.2d at 193. Additionally, "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue," a court should not dismiss a claim of unjust enrichment at the motion-to-dismiss stage. Joseph Sternberg, Inc. v. Walber 36th St. Assocs., 594 N.Y.S.2d 144, 146 (App. Div. 1st Dept. 1993). Here, there is a dispute as to whether the Representation Letter and Customer's Agreement completely covers the dispute and whether the Plaintiffs were induced to enter into the agreements as a result of fraud.

Accordingly, it is not appropriate to dismiss the claim of unjust enrichment at this stage based on the purported existence of a contract.

As for whether Plaintiffs have properly alleged the elements of a claim for unjust enrichment, Plaintiffs allege that the Defendants "received moneys" from the Class Members in connection with the alleged fraud and that Plaintiffs "suffered valuable losses." (Am. Compl. ¶ 145.)  Plaintiffs have also pled enough facts to show that they might be entitled to a return of the money under principles of equity—at the least, it is not for this Court to find on a motion to dismiss that Plaintiffs are not entitled to such a benefit in equity.  Accordingly, Defendants' motion to dismiss the unjust enrichment claim is denied.

### III.  HVB's Standing Defense

HVB asserts a standing defense to Plaintiffs' claims, arguing that Plaintiffs cannot meet this most fundamental requirement to maintain their lawsuit.  HVB argues that the Complaint does not allege that any HVB entity provided banking services in connection with the Plaintiffs' transactions.  In fact, HVB argues that it did not enter the alleged conspiracy until October of 1999, the month after the Longs agreed to enter into the BLIPS transaction.

To establish standing, a "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984) (citation omitted).  HVB argues that Plaintiffs fail to allege that any HVB conduct caused the Plaintiffs any personal injury, and thus the Plaintiffs lack standing to bring their claims against HVB.  Plaintiffs respond by asserting the conspiracy exception to the standing requirement.

Conspiracy allegations represent a limited exception to the general rule of standing requiring a direct nexus between the defendant's actions and the plaintiff's injuries.  If a

conspiracy is properly alleged, then injuries suffered at the hand of any particular defendant are imputed to all other conspiracy participants, and a plaintiff can overcome the otherwise absolute bar to standing. See Rios v. Marshall, 100 F.R.D. 395, 404 (S.D.N.Y. 1983) ("Where a complaint properly alleges a conspiracy by several defendants, a plaintiff injured by one of the defendants as a result of the conspiracy has standing to sue the co-conspirator defendants even though the plaintiff had no direct dealings with the co-conspirators.").  The Plaintiffs respond to the standing challenge by asserting that all the Defendants participated in a conspiracy to defraud the Plaintiffs and the other members of the Class, so the harm does not need to be directly attributable to HVB; as long as HVB is found to be a member of the larger conspiracy, the unlawful acts of the other members of the conspiracy are imputed to HVB and HVB is responsible for the Class losses.

To plead a valid cause of action for conspiracy, a plaintiff in New York must allege an underlying tort of fraud and four elements:  "(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Best Cellars, 90 F. Supp. 2d at 446.

Claims premised upon "conclusory, vague, or general allegations of conspiracy" cannot survive a motion to dismiss. Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997); see also Goldstein v. Siegel, 244 N.Y.S.2d 378, 382 (N.Y. App. Div. 1st Dept. 1963) (a plaintiff must "allege at least some of the facts of agreement or separable acts, if any, of the alleged co-conspirators in order to support the responsibility of each for the acts of all the others. Otherwise, the allegation remains the barest of legal conclusions").

As previously discussed, Plaintiffs have properly alleged HVB's involvement in a conspiracy to defraud the Plaintiffs. (See supra Discussion Section IV(B).)  Even if HVB did not have any direct involvement with the Plaintiffs' decision to invest in the tax shelters, the Plaintiffs have standing to sue HVB as a conspirator to the actions of HVB's co-defendants. Presidential Life Ins. Co. v. Milken, 946 F. Supp. 267, 280 (S.D.N.Y. 1996) ("A class representative who alleges a conspiracy by a group of defendants has standing to sue each defendant, even if it did not enter into separate transactions with each defendant.").  Plaintiffs may fairly bring claims against HVB because "one who enters a conspiracy late, with knowledge of what has gone before, and with the intent to pursue the same objective, may be charged with preceding acts in furtherance of the conspiracy." Industrial Bldg. Materials, Inc. v. Interchemical Corp., 437 F.2d 1336, 1343 (9th Cir. 1970).

As the Court finds that Plaintiffs have properly pled the conspiracy claim, the Court also finds that the conspiracy exception eliminates any deficiencies in Plaintiffs' standing so that Plaintiffs have standing to sue HVB.

**CONCLUSION**

This case involves multiple plaintiffs, defendants, and claims, and for the sake of clarity the Court will summarize its holding:

1.     Plaintiffs' RICO claim is DISMISSED for failure to allege a specific enterprise that is separate and distinct from the fraudulent tax shelter scheme.

2.     All of Plaintiffs' OPIS-based fraud and breach of fiduciary duty claims are DISMISSED for failure to satisfy the statute of limitations.  Specifically, the OPIS-based common-law fraud, civil conspiracy to defraud, aiding and abetting fraud, breach of fiduciary

duty, and aiding and abetting breach of fiduciary duty claims are dismissed. Accordingly, all claims related to Kottler's alleged injuries are dismissed from the case.

3.     Plaintiffs' fraud claim is DISMISSED for failure to plead with particularity.

4.     Plaintiffs' claim against Presidio for breach of fiduciary duty is DISMISSED.

5.     Plaintiffs' BLIPS-based claims of conspiracy to defraud, aiding and abetting

fraud, aiding and abetting breach of fiduciary duty, and unjust enrichment are not dismissed as to all defendants. As for those claims, Defendants' motion to dismiss is DENIED. Further, Plaintiffs have standing to sue Defendant HVB.

The parties should appear for a pre-trial conference on Thursday, February 5 at 2 p.m. in Courtroom 20C.

Dated: New York, New York
        January 9, 2009

SO ORDERED

PAUL A.CROTTY
United States District Judge

30